UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CAROL F. NICKEL, on behalf of herself and all others similarly situated,<br><br>  Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, et al.,<br><br>  Defendant. | Case No: C 94-2716 SBA<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR ORDER APPROVING FINAL DISTRIBUTIONS, PAYMENT OF FINAL ATTORNEYS FEES, AND DISMISSAL OF THE CASE**<br><br>Docket 959 |

The parties are presently before the Court on Plaintiff's unopposed Motion for Order Approving Final Distributions, Payment of Final Attorneys Fees, and Dismissal of the Case. Having read and considered the papers submitted in connection with the motion, and being fully informed, the Court hereby GRANTS the motion. The Court, in its discretion, resolves the instant matter without oral argument. Fed.R.Civ.P. 78(b).

**I.    BACKGROUND**

    **A.    OVERVIEW**

The parties are familiar with the facts of this case, which are summarized only briefly herein. The instant class action was filed in 1994 against the Bank of America, on behalf of a class of trust beneficiaries. The case settled in two phases. The First Settlement was approved by Judge Charles Legge on December 22, 2000. The Second Settlement was approved by this Court on May 4, 2004.

Following the distribution of the First Settlement Fund, the Court held a hearing on May 10, 2004, at which it presided over presentations from charities seeking a distribution of the "leftover" monies. On May 20, 2004, the Court issued an order specifying 28 charities it had selected for distribution of those monies. (Docket 628.)

Leftover funds also remained in the Second Settlement Fund. Thus, on January 9, 2006, the Court issued an order informing the parties that approximately $5 million in unclaimed funds would be distributed to charities, and solicited input as to which of them should receive a distribution. One of the class members, Paul Christiansen, however, objected to the Court's proposal. The Court overruled Christiansen's objections, who then appealed to the Ninth Circuit.[1] In the meantime, on April 27, 2006, the Court issued an order distributing the unclaimed funds to 74 selected charities, but stayed distribution of the funds pending resolution of the appeal. (Docket 805.)[2] The Ninth Circuit subsequently affirmed this Court's ruling and the Supreme Court denied Christiansen's petition for writ of certiorari.

### B. THE INSTANT MOTION

With the appellate process concluded, The Mills Firm now seeks approval for the final distribution of the residue from the First and Second Settlement Funds. There is $213,013.21 remaining in the First Settlement Fund and $127,661.62 in the Second Settlement Fund, for a total of $340,674.83. (Rosenthal Decl. ¶¶ 8, 17.) Class Counsel seeks approval to distribute these funds as follows:

Attorneys' Fees on Appeal: Payment of $125,000.00 in attorney's fees to The Mills Firm ("Class Counsel") for services rendered in connection with the appeal (apportioned as follows: $35,746.63 from the First Fund and $89,253.37 from the Second Fund);

Fees for Claims Administrator: Payment of $93,653.71 to Rosenthal & Company for its services relating to the administration of the class settlement funds (apportioned as follows: $55,245.46 from the First Fund and $38,408.25 from the Second Fund); and

Distribution to Charities: Distribution of the remaining $122,021.12 on a pro rata basis to the 74 charities previously identified by the Court in its Order of April 27, 2006.

---

[1] The Court appointed The Mills Firm to serve as appellate counsel on behalf of the class. (Docket 837.)

[2] Originally, 75 charities were listed but it later was determined that two of the charities were actually the same. Following the Court's ruling, The Mills Firm secured the release and distribution of all but a small portion of the Second Settlement Fund.

## II.   DISCUSSION

### A.   ATTORNEY'S FEES

The payment of Class Counsel's fees for its appellate services is authorized by the Court's Order of November 6, 2006, which provides that "The Mills Firm may bring a motion for reimbursement for attorney time and expenses that it expends on the Appeal from the remaining moneys in the Second Settlement Fund at the hourly lodestar rates that the Court has previously approved in this action."  (Docket 837.)

The Ninth Circuit employs the lodestar approach to determine whether a fee request is reasonable.  Jordan v. Multnomah County, 815 F.2d 1258, 1262-63 (9th Cir. 1987).  "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate."  Camacho v. Bridgeport Financial, Inc., 523 F.3d 973, 978 (9th Cir. 2008) (internal quotations and citation omitted).  The lodestar is considered presumptively reasonable, though the district court has the discretion to consider an upward or downward adjustment, depending on the circumstances presented.  Id.

Here, the billing statements provided by Class Counsel indicate that the lodestar is $186,851.05, which is based on 398.52 hours in billable time and corresponding billing rates ranging from $400 to $495 per hour.  (Mills Decl. Ex B.)  Class Counsel also submitted an itemization of costs totaling $1,819.69, for a total expenditure of $188,670.74.   (Id. Ex. C; Supp. Mills Decl. ¶ 2.)  However, Class Counsel indicates that it is waiving $63,670.74 in fees and costs, and therefore, only is seeking recovery in the amount of $125,000.  (Supp. Mills Decl. ¶ 3.)  This waiver effectively constitutes a voluntary 34% reduction in the lodestar.

Given the facts presented, the Court finds that the amount of hours expended and the billable rates used are reasonable, particularly in light Class Counsel's success on appeal, as well as the voluntary discount provided.  The Court therefore finds that the record justifies payment of $125,000 in appellate fees and costs to The Mills Firm, consistent with the Court's November 6, 2006 Order.

### B. CLAIMS ADMINISTRATOR FEES

Rosenthal & Company ("Rosenthal") LLC previously was appointed by the Court in 2000 to serve as the Claims Administrator in this case. In that capacity, Rosenthal handled the distributions of the First and Second Settlements, as well as the subsequent *cy pres* distributions.

Rosenthal has submitted two invoices, one for $55,245.46 and the other for $38,408.25. (Supp. Rosenthal Decl. Exs. A, B.) The first invoice consists of $53,402.50 for services rendered over the course of the last four years in administering the settlements and distributions relating to the First Settlement Fund. Rosenthal also seeks reimbursement of $1,842.96 for advance payments made for income taxes. (Rosenthal Decl. ¶ 9.)

The second invoiced amount consists of $37,208.25 for services rendered over the course of the last two and one-half years relating to the administration of the Second Settlement Fund. (Rosenthal Decl. ¶ 18.) Added to this amount is $1,200, which Rosenthal anticipates in IRS penalties for IRS Form 1099 mismatches in names and Social Security numbers. (Id.)

The Court finds that the invoices presented by Rosenthal support the amounts requested as compensation for work as the claims administrator in this case. Therefore, the Court approves the distribution of $93,653.71 to Rosenthal from the First and Second Settlement Funds.

### C. DISTRIBUTION TO CHARITIES

As noted, the Court in its April 27, 2006 Order approved distribution of $5,011,831.24 in leftover funds to 74 charities. The Order notes that any interest accrued before actual distribution should be paid out to each of those charities on a pro rata basis. Consistent with that Order, Class Counsel now proposes distributing the remaining $122,021.08 on a pro rata basis to these particular charities. A spreadsheet indicating the amount each of these charities will receive is attached as Exhibit B to the Rosenthal Declaration. The payouts range from $558.65 to $9,787.47.

The proposed distribution to the charities identified in the Court's April 27, 2006 Order is equitable and reasonable. Because of the relatively small amount of funds remaining, it would be more administratively burdensome (and hence, costly) to utilize a different plan of distribution. In addition, such an approach is consistent with the Court's April 27, 2006 Order, which directed that any accrued interest be distributed in this manner. Although only the second group of charities will

receive monies, such a differential is *de minimus,* since almost all of the charities in the first group are included in the second.[3]

## III.    CONCLUSION

IT IS HEREBY ORDERED THAT:

1.    Plaintiff's unopposed Motion for Order Approving Final Distributions, Payment of Final Attorneys Fees, and Dismissal of the Case (Docket 959) is GRANTED.

2.    Pursuant to the Court's previous Order of November 7, 2006, The Mills Law Firm shall be paid $35,746.63 from the First Settlement Fund and $89,253.37 from the Second Settlement Fund, for a total of $125,000.00, for its work in response to the appeal filed by Objector Paul Christiansen in the above-captioned action.

3.    Rosenthal & Company shall be paid $55,245.46 from the First Settlement Fund and $38,408.25 from the Second Settlement Fund as compensation for additional settlement administration costs, for a total payment of $93,653.71.

3.    The funds remaining, i.e., $122,021.08 plus any accrued interest, shall be divided proportionally among the charities previously named in this Court's Order of April 27, 2006, as set forth in Exhibit B to the Declaration of Daniel Rosenthal, filed April 30, 2009 (Docket 972).

IT IS SO ORDERED.

Dated: May 5, 2009

_____
Hon. Saundra Brown Armstrong
United States District Judge

---

[3] All but 4 of the 28 charities in the first group are part of the second group of charity-recipients.